## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DISABILITY RIGHTS OHIO** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.:** |
| | : | |
| | : | |
| **v.** | : | **Judge:** |
| | : | |
| | : | |
| **OHIO DEPARTMENT OF** | : | **Magistrate Judge:** |
| **BEHAVIORAL HEALTH,** | : | |
| | : | |
| **and** | : | **TEMPORARY RESTRAINING** |
| | : | **ORDER REQUESTED** |
| **NORTHCOAST BEHAVIORAL** | : | |
| **HEALTH,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **LEEANNE CORNYN** | : | |
| **In her official capacity as Director of the** | : | |
| **Ohio Department of Behavioral Health** | : | |
| | | |
| **Defendants.** | | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND ATTORNEYS' FEES

---

## I.     INTRODUCTION

1.     This action seeks to enjoin Defendant Ohio Department of Behavioral Health ("DBH"), Defendant Northcoast Behavioral Health ("NBH"), and Defendant LeeAnne Cornyn in her official capacity as director of DBH from continuing to violate federal and state laws that grant Plaintiff Disability Rights Ohio reasonable access to records for the purpose of fulfilling its mandate as the protection and advocacy system for people with disabilities in Ohio.

2.     Due to Defendants' continuing violation of federal and state law, Plaintiff Disability Rights Ohio seeks declaratory and temporary, preliminary, and permanent injunctive relief to enjoin Defendants from denying access to records retained by Defendants DBH and NBH. Plaintiff Disability Rights Ohio files suit and seeks relief as described after making repeated efforts to resolve this matter with the Defendants. Plaintiff Disability Rights Ohio also seeks attorneys' fees and costs and any other available relief.

3.     Each paragraph of this Complaint incorporates all others without specific restatement.

## II.     JURISDICTION AND VENUE

4.     Jurisdiction is vested in this Court as this case raises a question of general federal law, 28 U.S.C. § 1331, and under this Court's supplemental jurisdiction as to Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.     Plaintiff's cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. § 15041 et seq.; the Protection and Advocacy for Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e; 42 U.S.C. § 1983; and Ohio Rev. Code § 5123.601. Attorneys' fees and costs may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1. Defendant DBH is located in this district, and all Defendants are residents of the state of Ohio.

### III.  PARTIES

<u>**Plaintiff**</u>

7.  Plaintiff Disability Rights Ohio is a non-profit corporation duly incorporated in the state of Ohio.

8.  Plaintiff Disability Rights Ohio is designated by the Governor of the State of Ohio as the protection and advocacy system for people with disabilities in Ohio. Exec. Orders 2012-05K and 2015-10K; Ohio Rev. Code § 5123.60-601.

9.  Plaintiff Disability Rights Ohio files this Complaint in its own name to redress injuries to itself in fulfilling its mandate to protect and advocate for the rights of people with disabilities in Ohio.

10.  At all times material to this Complaint, Plaintiff Disability Rights Ohio was a "person" under 42 U.S.C. § 1983.

11.  Plaintiff Disability Rights Ohio's office is located at 200 Civic Center Drive, Suite 300, Columbus, Ohio, 43215.

12.  Congress established the protection and advocacy ("P&A") system in 1975 to protect and advocate for the rights of persons with developmental disabilities and reauthorized the system in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"). 42 U.S.C. § 15041 et seq. Congress provided P&A systems with the authority to investigate incidents of abuse and neglect against individuals with developmental disabilities and pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a). P&A systems also monitor facilities for, among other things, compliance with rights and safety of individuals with disabilities receiving services in facilities. Congress thereafter expanded the scope of the P&A system to provide protection and advocacy services to all persons with disabilities. The Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the

"PAIMI Act") provides for the protection of rights of individuals with mental illness, 42 U.S.C.

§ 10801 et seq.; and the Protection and Advocacy of Individual Rights Program (the "PAIR

Act") was created to protect the rights of all other individuals with disabilities who are not

covered under the PADD and PAIMI Acts. 29 U.S.C. § 794e et seq.

13.     Pursuant to these laws, Plaintiff Disability Rights Ohio has a federal mandate to

protect and advocate for the rights of persons with disabilities in Ohio, including residents of

mental health facilities like NBH overseen by DBH as well as other DBH-licensed facilities.

Among other activities, Plaintiff Disability Rights Ohio and its agents travel across the state of

Ohio monitoring conditions and treatment in facilities and service providers serving individuals

with disabilities as well as investigating allegations of abuse and neglect occurring in these

facilities. In recent years, Plaintiff Disability Rights Ohio has conducted monitoring and

investigation activities at numerous DBH-operated or licensed facilities serving individuals with

disabilities, including NBH, Class-one residential treatment facilities serving children, and

private psychiatric hospitals serving both adults and children.

### Defendants

14.     Defendant DBH is the department overseeing mental health and addiction

treatment in the state of Ohio as established under Ohio Rev. Code § 5119.14.

15.     Defendant DBH is located at 30 East Broad Street, 36th Floor, Columbus, Ohio

43215.

16.     Defendant DBH operates six state regional psychiatric hospitals under Ohio

Revised Code Chapter 5122.

17.     Defendant DBH also licenses private psychiatric hospitals and units and

residential facilities under Ohio Revised Code Chapter 5119.

18. Defendant DBH-operated or DBH-licensed providers serve individuals with various disabilities, including those with diagnoses of serious and other mental illnesses, Autism, ADHD, and Dementia.

19. Defendant DBH-licensed providers are facilities under 42 U.S.C. § 10802(3) and 42 C.F.R. § 51.2.

20. Defendant DBH-licensed providers are locations in which services, supports, and other assistance are provided to individuals with developmental and other disabilities under 42 U.S.C. § 15043(a)(2)(H) and 29 U.S.C. § 794e(f).

21. As the operator of state-regional psychiatric hospitals and the licensing and enforcement agency for mental health providers in Ohio, DBH is a facility and location in which services, supports, and other assistance are provided to individuals with disabilities.

22. Defendant DBH is also an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at facilities.

23. Defendant NBH is a state regional psychiatric hospital that provides inpatient care for, primarily, mentally ill adults.

24. NBH is located at 1756 Sagamore Road, Northfield, Ohio, 44067.

25. Defendant NBH is a facility as defined in 42 U.S.C. § 10802(3) and 42 C.F.R. § 51.2.

26. Defendant DBH operates Defendant NBH under Ohio Rev. Code Chapter 5122.

27. Defendant Cornyn is the director of DBH under Ohio Rev. Code § 5119.10. Pursuant to Ohio Rev. Code § 5119.10, Defendants DBH and NBH are under the direction of Defendant Cornyn, and Defendant Cornyn is responsible for the custody, use, and preservation of departmental records, papers, books, documents, and property.

28.     At all times and in all actions material to this Complaint, Defendants were "persons" under 42 U.S.C. § 1983 and acted under color of law.

## IV.     STATEMENT OF FACTS

**Request for quality assurance and personnel records related to death of patient at NBH**

29.     On January 17, 2025, Disability Rights Ohio received a report concerning the death of patient, Patient B, at NBH.

30.     Patient B was found deceased in their room with a plastic bag over their face on November 26, 2024. WEIRS No. 11267. Based on the information Disability Rights Ohio received, it determined that an investigation into Patient B's death was necessary as the report received indicated Patient B was subject to abuse and neglect resulting in their death.

31.     Specifically, Patient B was able to access a plastic bag. Plastic bags are generally prohibited in mental health facilities because of the ligature, suffocation, or choking risks they pose. Accordingly, Disability Rights Ohio opened an investigation in February 2025.

32.     Disability Rights Ohio is not aware that Patient B has any legal representative. DBH has not provided the name of any such individual.

33.     On March 3, 2025, Disability Rights Ohio requested records from NBH related to Patient B's death. Disability Rights Ohio requested the following records:

a)      Cause of death from Coroner's office,

b)      Any incident reporting related to Patient B from October 30, 2024, to time of death,

c)      Any scheduled medical appointments, doctor appointments, or specialist appointments for Patient B,

d)      The Medication Administration Record for Patient B,

e)      Any video captured related to Incident 11267, if retained.

34.     Disability Rights Ohio received the medication administration record and the autopsy report. The autopsy report stated that the cause of death was "smothering/suffocation," and that the manner of death was "suicide: secured plastic bag over head." Additionally, the coroner's report indicated a 14-minute delay from when Patient B was found and when NBH staff called 911 – though life-saving measures began immediately.

35.     On June 26, 2025, Disability Rights Ohio sent another email to DBH legal counsel requesting:

>     a)     Internal investigation documents related to a time gap in contacting emergency services after Patient B was discovered unconscious.
>
>     b)     Any corrective actions taken in response to this incident, including documentation of staff retraining, internal reviews, or disciplinary measures.

36.     DBH did not respond to Disability Rights Ohio's June 26th request for records.

37.     Disability Rights Ohio followed up again for the records on August 27, 2025. The same day, DBH legal counsel responded that DBH would not provide the records to Disability Rights Ohio stating: "your request for 'corrective actions taken in response to this incident, including documentation of staff retraining or internal reviews' seeks confidential quality assurance records, which are protected under R.C. 5122.32. Your request for 'disciplinary measures' is vague, as it does not specify the records you seek. OhioMHAS[1] maintains discipline records by employee name."

38.     On August 28, 2025, Disability Rights Ohio responded with more detail about the information requested and provided DBH with the legal authority that allows Disability Rights Ohio to access quality assurance records.

---

[1] Ohio Department of Behavioral Health was formerly known as Ohio Department of Mental Health and Addiction Services.

39.     On September 4, 2025, DBH responded stating that it was still unclear about the legal basis for Disability Rights Ohio's request. DBH also said that it needed more detail about the personnel records requested.

40.     Disability Rights Ohio responded the same day with additional legal authority to access the quality assurance and personnel records. It also explained again which personnel records were requested.

41.     On September 8, 2025, Disability Rights Ohio emailed DBH again to provide more legal authority and to request an update on the status of the records.

42.     DBH responded that their review was still in process.

43.     Disability Rights Ohio followed up again with DBH on September 11, 2025 about the status of the records.

44.     DBH responded on September 12, 2025 stating that it did not agree that Disability Rights Ohio had established that it has the authority to access the records requested and that DBH would consider Disability Rights Ohio's request as a request for public records.

45.     On September 23, 2025, DBH provided a one-page document regarding the discipline of an NBH employee based on Patient B's death. This record raises another issue that NBH staff did not appropriately supervise Patient B prior to their death.

46.     DBH has not provided any additional records requested.

47.     On September 25, 2025, Disability Rights Ohio sent DBH a letter with a final demand for the records and explained in even more detail the legal basis for the records and the reasons why DBH should not consider Disability Rights Ohio's request pursuant to Ohio's Public Records Act.

48. DBH denied Disability Rights Ohio's request by email on September 30, 2025. In that email DBH raised for the first time that Patient B had a legal representative. Disability Rights Ohio requested the name and contact information for the representative. DBH refused to provide it.

### **Outstanding records related to PATIENT B's death**

49. To date, DBH has denied Disability Rights Ohio access to the following:

a) Quality assurance records, including documentation of the initial review conducted by leadership, follow up review, root cause analysis, and any other corrective action implemented because of this incident.

b) Any corrective actions taken in response to this incident, including documentation of staff retraining, internal reviews, or disciplinary measures for the following staff who were identified in the incident report:

        i. Robyn Primm

        ii. Demetria Woods

        iii. Royall Chambers

        iv. David Colletti

c) Any corrective actions taken in response to this incident, including documentation of staff retraining, internal reviews, or disciplinary measures for the following staff who were not identified in the incident report:

        i. Unit nurse – this individual found Patient B

        ii. The staff person who called the code blue

        iii. The staff person who initiated CPR

        iv. The staff members who responded to the code blue

        v. The staff person who retrieved the crash cart

vi.     The staff members who administered the AED machine

vii.     The staff member who called the Macedonia Fire

Department

**Request for Web-Enabled Incident Reporting System (WEIRS) Reports for ongoing investigations at two Class-one Residential Treatment Facilities for youth**

50.     Disability Rights Ohio has two open investigations for several reports of abuse and neglect in two DBH-licensed Class one residential treatment facilities serving children and adolescents with disabilities. One of these facilities also operates an acute private psychiatric hospital/unit for youth, also licensed by DBH.

51.     Class one facilities provide accommodations, supervision, personal care services, and mental health services for one or more unrelated adults with mental illness or one or more unrelated children or adolescents with severe emotional disturbances. Ohio Admin. Code § 5122-30-03(A)(42).

52.     Private psychiatric hospitals or units provide inpatient psychiatric services. Ohio Admin. Code § 5122-14-01.

53.     The youth at these facilities have diagnoses of serious mental illnesses, Autism, and ADHD, among others.

54.     For facility, RTF #1, Disability Rights Ohio has an ongoing investigation at the Class one residential treatment facility and its acute private psychiatric hospital. Disability Rights Ohio has reports of, among other things, use of prohibited chemical restraints, simultaneous use of chemical restraints and seclusion, inappropriate use of restraint and seclusion, over-reliance on medications that are unapproved and dangerous to the youth, underreporting, staff abuse, sexual assault, staff failing to intervene in peer-to-peer aggression resulting in injuries, lack of a therapeutic environment, and a lack of trauma-informed care.

Disability Rights Ohio believes that the health and safety of these youth are in serious and immediate jeopardy.

55.    DBH is aware of Disability Rights Ohio's concerns because they have met about the facility several times. Most recently, Disability Rights Ohio's medical consultant and DBH's Chief Medical Officer met to discuss concerns regarding the dangerous use of chemical restraints at RTF #1. DBH has also completed a complaint-based survey of RTF #1.

56.    For facility, RTF #2, Disability Rights Ohio has reports of high rates of suicide attempts, neglect, peer-to-peer aggression, lack of a therapeutic environment, and a lack of trauma-informed care, among others. Disability Rights Ohio believes that abuse and neglect is occurring or has occurred at this facility.

57.    Many of the incidents at RTF #2 have been reported to DBH through WEIRS.

58.    Because of the youth's needs and the structure of the facilities, it is not feasible for the youth to consent to Disability Rights Ohio's access to WEIRS reports. In Disability Rights Ohio's experience, the residential treatment facilities and psychiatric hospitals/units for youth are highly restrictive and institutional settings, including at RTF #1 and RTF #2. In addition, due to school and the programs that youth must attend throughout the day, the youth do not always have ready access to telephones and are often locked on units of the facility when not engaged in these activities. The environment at these facilities outside of group and school is often unstructured, chaotic, and frequently includes confrontations with staff and other peers. Many youths in these facilities experience ongoing mental health crises due to their complex behavioral health needs. Additionally, many children at the facilities are emotionally dysregulated, heavily medicated, and often cannot interact appropriately with their environment. Many of the youth have complex trauma histories and the incidents occurring at the facilities are

often experienced as retraumatizing by the youth. This makes authorization for release of information difficult or impossible.

59.     The youth in these facilities are there to undergo treatment due to their complex behavioral health needs. They often report to Disability Rights Ohio fear of retaliation from facility staff for giving permission or reporting incidents themselves. Frequent changes in key facility leadership, the ability to reach youths within the facility during regular business hours, and youths moving from one facility to the other have been additional barriers impacting Disability Rights Ohio's abilities to obtain consent from the youth.

60.     Most, if not all, youth served at RTF #1 and RTF #2 are in the custody of children services agencies. DBH has not provided guardian contact information for any youth at these facilities who may have a guardian other than the state.

61.     On September 9, 2025, Disability Rights Ohio requested:

a)      All WEIRS reports received since August 22, 2025 from RTF #1, from both their class one residential facility and their acute private psychiatric hospital. Disability Rights Ohio has an ongoing investigation at RTF #1 and know that abuse and neglect is occurring there. Disability Rights Ohio has access to these records under 42 U.S.C. § 10805; 42 U.S.C. § 10806; 42 C.F.R. § 51.42; 42 U.S.C. § 15043; 45 C.F.R. § 1326.25; 29 U.S.C. § 794e(f)(2); Ohio Rev. Code 5123.601(A)(1) and (2).

b)      All WEIRS reports received since August 22, 2025 from RTF #2. Disability Rights Ohio has an ongoing investigation at RTF #2 and know that abuse and neglect is occurring there. Disability Rights Ohio has access to these records under 42 U.S.C. § 10805; 42 U.S.C. § 10806; 42 C.F.R. § 51.42; 42

U.S.C. § 15043; 45 C.F.R. § 1326.25; 29 U.S.C. § 794e(f)(2); Ohio Rev. Code 5123.601(A)(1) and (2).

62.     In its September 12, 2025, email, DBH included Disability Rights Ohio's request for WEIRS reports in its decision to deny Disability Rights Ohio's access to the records. DBH stated that it would consider this request under Ohio's Public Records Act.

63.     In Disability Rights Ohio's letter to DBH on September 25, 2025, Disability Rights Ohio reiterated its legal authority to access the information requested.

64.     DBH did not respond to Disability Rights Ohio's September 25, 2025 letter; however, it provided copies of WEIRS reports for the facilities on September 26, 2025.

65.     The WEIRS reports were provided for the dates between August 22, 2025 and September 9, 2025. Because of the delay in providing the reports, Disability Rights Ohio was not able to follow up on several incidents of concern and relevant, time sensitive information is lost.

66.     For example, RTF #1 reported two incidents of the attempted suicide of a resident with a corresponding physical restraint that occurred on August 25, 2025 on their acute unit. Disability Rights Ohio has reports of inappropriate physical restraints on the youth at RTF #1 and would have requested video of these incidents to view the restraint. RTF #1 has informed Disability Rights Ohio that video is recorded over every 30 days. Video for these two incidents is likely gone.

67.     Had DBH followed the timelines set out in federal law for providing documents to Disability Rights Ohio, video would still be available so that Disability Rights Ohio could complete a full investigation into the incidents.

### **WEIRS reports of deaths in facilities and other WEIRS reports**

68.     Disability Rights Ohio has a federal mandate to monitor facilities and service providers serving individuals with disabilities across the state. Monitoring activities are not

complaint-based and are for routine circumstances, including monitoring for compliance with resident or patient rights and safety.

69.     To complete these activities, federal law requires that Disability Rights Ohio have access to service providers and facilities as well as the patients and residents located there.

70.     As described above, Disability Rights Ohio also has authority to investigate allegations of abuse and neglect of individuals with disabilities.

71.     Ohio law requires Disability Rights Ohio to carry out the advocacy services provided for under federal law.

72.     DBH operates or licenses facilities and service providers that serve individuals with all disability types. These facilities/service providers include six state regional psychiatric hospitals, private psychiatric hospitals, Class one (serves children and adults), Class two, and Class three residential facilities, and community mental health providers.

73.     DBH-licensed facilities must report incidents that occur at the facilities that fall within certain categories (e.g. death, suicide, suicide attempt, physical and sexual assault, neglect) to DBH using DBH's WEIRS system.

74.     DBH-operated state regional psychiatric hospitals, like NBH, do not use WEIRS, but must still track these incidents.

75.     DBH maintains all WEIRS reports and state regional psychiatric incident reports.

76.     DBH may also initiate investigations based on WEIRS and incident reports.

77.     For decades, Disability Rights Ohio (and its predecessor, Ohio Legal Rights Service) received copies of the first page of WEIRS reports from each DBH-licensed facility.

78.     These reports were provided to Disability Rights Ohio the day the report was filed or within 24 hours.

79.     Disability Rights Ohio uses the WEIRS reports to monitor the incidents occurring at the facilities. They are a necessary part of Disability Rights Ohio's access to service providers and recipients in facilities to complete monitoring activities and to determine if or when an investigation of abuse and neglect should be done.

80.     Disability Rights Ohio also uses the WEIRS reports in ongoing investigations to know when incidents have occurred and to track patterns at the facilities it is investigating.

81.     On August 21, 2025, DBH discontinued providing Disability Rights Ohio with copies of the WEIRS reports.

82.     DBH did not notify Disability Rights Ohio that the WEIRS reports would no longer be provided.

83.     The discontinuation of WEIRS reports to Disability Rights Ohio came just after DBH and Disability Rights Ohio held two contentious meetings about DBH's response to Disability Rights Ohio's concerns of dangerous practices occurring at a youth residential treatment facility.

84.     On August 26, 2025, a Disability Rights Ohio staff member emailed DBH to ask about the WEIRS reports. DBH responded the same day stating that Disability Rights Ohio's access to WEIRS reports was "was inconsistent with OhioMHAS policies, statewide data governance requirements, and applicable federal and state privacy laws."

85.     WEIRS reports alert Disability Rights Ohio that an incident occurred. Disability Rights Ohio then determines whether to follow up with the facility for more information.

86.     On August 26, 2025, general counsel for Disability Rights Ohio emailed DBH legal counsel to inquire further about the basis for discontinuing the WEIRS reports. DBH responded the next day.

87.     Disability Rights Ohio requested a meeting to discuss access to this information. This meeting was held on September 3, 2025. However, DBH and Disability Rights Ohio were unable to agree on Disability Rights Ohio's access to WEIRS reports.

88.     On September 9, 2025, Disability Rights Ohio requested the following:

a)      All WEIRs reports received since August 22, 2025 from any DBH licensed facility that reported the death of an individual except that Disability Rights Ohio does not need WEIRS reports from community mental health agencies. Disability Rights Ohio uses this information to monitor compliance with the rights and safety of residents in these facilities as well as for investigation purposes. Disability Rights Ohio has access to this information under 42 U.S.C. § 10805; 42 U.S.C. § 10806; 42 C.F.R. § 51.31; 42 C.F.R. § 51.42; 42 C.F.R. § 51.41; 42 U.S.C. § 15043; 45 C.F.R. § 1326.21; 45 C.F.R. § 1326.25; 29 U.S.C. § 794e(f)(2); Ohio Rev. Code 5123.601(A)(1) and (2).

b)      All WEIRS reports received by DBH from August 22, 2025 to the present date for the following:

i.      Unit nurse – this individual found PATIENT B

ii.     Class one residential facilities

iii.    Class two residential facilities

iv.     Class three residential facilities

v.      Private psychiatric hospitals

Disability Rights Ohio uses this information for both monitoring and investigation purposes. Disability Rights Ohio has access to this information under 42 U.S.C. § 10805; 42 U.S.C. § 10806; 42 C.F.R. § 51.31; 42 C.F.R. § 51.42; 42 C.F.R. §

51.41; 42 U.S.C. § 15043; 45 C.F.R. § 1326.21; 45 C.F.R. § 1326.25; 29 U.S.C. § 794e(f)(2); Ohio Rev. Code 5123.601(A)(1) and (2).

89.     Disability Rights Ohio's request for WEIRS reports is intended to be ongoing. Disability Rights Ohio requested that reports be provided within the previous 24-hour timeframe.

90.     On September 12, 2025, DBH responded that it disagreed that Disability Rights Ohio has access to WEIRS reports under its federal or state access authority and it would consider the request under Ohio Public Records Act.

91.     Without timely access to WEIRS reports for investigation and monitoring purposes, Disability Rights Ohio may lose other relevant information about incidents, such as video, witnesses, and victims.

92.     DBH's interpretation of timelines under Ohio's Public Records Act does not align with the timelines under the access authority provided to Disability Rights Ohio in state and federal law. These timelines require prompt or ready access to records. *See* 42 U.S.C. 10805(a)(4); 42 C.F.R. § 51.41(a); Ohio Rev. Code § 5123.601(A)(1)-(2). Under PADD and PAIR, the timelines are specific to 3 business days or 24 hours in some cases. 42 U.S.C. § 15043(a)(J)(i)-(ii); 45 C.F.R. § 1326.25(c)(1)-(2); 29 U.S.C. § 794e(f)(1)-(3).

93.     On September 26, 2025, DBH provided redacted WEIRS reports for facilities that are dated between August 22, 2025 to September 9, 2025. This was weeks after the request was made and the events occurred.

94.     This denial and delay of access to documents requested interferes with Disability Rights Ohio's ability to carry out its mandates under federal and state law.

## V.     LEGAL CLAIMS

### First Claim for Relief: Based on Violation of the PAIMI Act, Implementing Regulations, and 42 U.S.C. § 1983 against all Defendants

### DEATH INVESTIGATION RECORDS

95.     Under the PAIMI Act, Disability Rights Ohio has authority to investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 10805(a)(1)(A).

96.     To complete investigations of abuse and neglect PAIMI provides access to: any individual (including an individual who has died or whose whereabouts are unknown)—

> a)      who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
>
> b)      who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> c)      with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect[.]

42 U.S.C. § 10805(a)(4)(B).

97.     PAIMI Act's authority to access records includes access to quality assurance and personnel records. 42 C.F.R. §§ 51.41(c)(1)-(2) and (d); *Ctr. For Legal Advoc. v. Hammons*, 323 F.3d 1262, 1270 (10th Cir.2003) (after examining the statutory language and according it a straightforward interpretation, concluding that "records" under the PAIMI Act include peer review and quality assurance records).

98.     Disability Rights Ohio received a report of the death of Patient B at NBH because of suffocation using a plastic bag. Disability Rights Ohio determined that the circumstances surrounding Patient B's death may be the result of abuse or neglect. This determination has been reinforced by new information received indicating that NBH staff did not properly supervise Patient B prior to their death.

99.     NBH is operated by DBH. Accordingly, Defendants NBH and DBH are facilities under PAIMI.

100.    DBH is also an agency charged with investigating abuse, neglect, or injury occurring at facilities and did so here.

101.    Disability Rights Ohio is not aware that Patient B has any legal representative. DBH has refused to provide the name of any such individual.

102.    Disability Rights Ohio has access to the quality assurance and personnel records it requested from DBH under PAIMI.

103.    DBH's denial of access to these records violates the PAIMI Act and its implementing regulations and interferes with Disability Rights Ohio's ability to complete a full investigation of abuse and neglect regarding Patient B's death.

104.    Defendants' violation of the PAIMI Act and its implementing regulations frustrates the rights of individuals treated at NBH to have access to a meaningful and effective protection and advocacy system.

105.    Defendants have acted under color of state law to deprive Plaintiff Disability Rights Ohio of federal rights under the PAIMI Act.

**WEIRS REPORTS RELATED TO YOUTH RESIDENTIAL TREATMENT FACILITIES/PRIVATE PSYCHIATRIC HOSPITAL, RTF #1 AND RTF #2**

106.    Under 42 U.S.C. § 10805(a)(1)(A), Disability Rights Ohio has access under the PAIMI Act to the WEIRS reports related to RTF #1 and RTF #2 to complete a full investigation of abuse and neglect at those facilities.

107.    RTF #1 and RTF #2 are licensed by DBH as Class one residential treatment facilities.

108.    RTF #1 is also licensed by DBH as an acute private psychiatric hospital.

109.    RTF #1 and RTF #2 are facilities under PAIMI.

110.    DBH is an agency charged with investigating abuse, neglect, or injury occurring at facilities such as RTF #1 and RTF #2.

111.    Youth receiving services at RTF #1 and RTF #2 are individuals with serious mental illness or emotional disturbance.

112.    For RTF #1, Disability Rights Ohio has received reports of among other things, use of prohibited chemical restraints, simultaneous use of chemical restraints and seclusion, inappropriate use of restraint and seclusion, over-reliance on medications that are unapproved and dangerous to the youth, underreporting, staff abuse, sexual assault, staff failing to intervene in peer-to-peer aggression resulting in injuries, lack of a therapeutic environment, and a lack of trauma-informed care. Disability Rights Ohio believes that the health and safety of these youth are in serious and immediate jeopardy.

113.    For RTF #2, Disability Rights Ohio has reports of high rates of suicide attempts, neglect, peer-to-peer aggression, lack of a therapeutic environment, and a lack of trauma-informed care, among others. Disability Rights Ohio believes that abuse and neglect is occurring or has occurred at this facility.

114.    As a result of the youth's mental health needs as well as the structure of the facility services, it is not feasible for youth to authorize disclosure of WEIRS reports to Disability Rights Ohio.

115.    Most, if not all, youth served at RTF #1 and RTF #2 are in the custody of children services agencies, therefore, consent to access this information is not required. DBH has not provided guardian contact information for any youth at these facilities who may have a guardian other than the state.

116.    DBH's denial and delay of access to these records violates the PAIMI Act and its implementing regulations and interferes with Disability Rights Ohio's ability to complete full investigations of abuse and neglect at these facilities.

117.    Defendants' violation of the PAIMI Act and its implementing regulations frustrates the rights of youth treated at DBH-licensed facilities to have access to a meaningful and effective protection and advocacy system.

118.    Defendants have acted under color of state law to deprive Plaintiff Disability Rights Ohio of federal rights under the PAIMI Act.

119.    Plaintiff Disability Rights Ohio is entitled to relief under 42 U.S.C. § 10805 and 42 U.S.C. § 1983.

**Second Claim for Relief: Based on the Violation of the PADD Act, Implementing Regulations, and 42 U.S.C. § 1983 against Defendants DBH and Cornyn**

**WEIRS REPORTS RELATED TO YOUTH RESIDENTIAL TREATMENT FACILITIES, RTF #1 AND RTF #2**

120.    Under the PADD Act, Disability Rights Ohio has access to the WEIRS reports requested on September 9, 2025 related to facilities, RTF #1, and RTF #2.

121.     Under the PADD Act, Disability Rights Ohio has "immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability—if the system determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy. 42 U.S.C. § 15043(a)(2)(J).

122.     Further, Disability Rights Ohio has access to: all records of—

    a)     any individual with a developmental disability, in a situation in which— the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;

    b)     the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and

    c)     a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 15043(a)(2)(I).

123.     DBH licenses RTF #1 and RTF #2 as Class one residential treatment facilities for children and adolescents. RTF #1 is also licensed by DBH as an acute private psychiatric hospital.

124.     DBH is an agency charged with investigating abuse, neglect, or injury occurring at facilities such as RTF #1 and RTF #2.

125. The youth covered by the WEIRS reports for RTF #1 and RTF #2 include youth with developmental disabilities.

126. RTF #1 and RTF #2 are locations under PADD because they have in the past or are currently serving, supporting, or otherwise assisting youth with developmental disabilities.

127. Based on the information Disability Rights Ohio has received about incidents at RTF #1, it has determined that abuse and neglect are happening there. Disability Rights Ohio believes that the youths' health and safety are in serious and immediate jeopardy. Under PADD, no consent is required to access WEIRS reports of this facility. DBH is required to provide the WEIRS reports within 24 hours after the request is made.

128. Based on information Disability Rights Ohio has received about incidents at RTF #2, it determined that abuse and neglect is happening there.

129. As a result of the youth's mental health needs as well as the structure of the facility services, it is not feasible for youth to authorize disclosure of WEIRS reports to Disability Rights Ohio.

130. Most, if not all, youth at RTF #2 are in the custody of children services agencies. No consent is required to access the WEIRS reports of this facility. DBH is required to provide the WEIRS reports not later than 3 business days after the request is made.

131. DBH provided WEIRS reports requested on September 9, 2025 on September 26, 2025.

132. DBH's delay in providing the requested information has likely resulted in a loss of information relevant to Disability Rights Ohio's ongoing investigations.

133. Defendants' refusal to allow Plaintiff Disability Rights Ohio access to requested WEIRS reports within the timelines set out under PADD, violates the PADD Act and its

implementing regulations and interferes with Disability Rights Ohio's ability to conduct full investigations of abuse and neglect at RTF #1 and RTF #2.

134.    Defendants' violation of the PADD Act and its implementing regulations frustrates the rights of individuals treated at DBH-licensed facilities to have access to a meaningful and effective protection and advocacy system.

135.    Defendants have acted under color of state law to deprive Plaintiff Disability Rights Ohio of federal rights under the PADD Act.

### WEIRS REPORTS OF ANY DEATHS IN DBH-LICENSED FACILITIES

136.    Under the PADD Act, Disability Rights Ohio has access to the WEIRS reports requested on September 9, 2025 related to the death of any individual in an DBH-licensed facility.

137.    The PADD Act states, Disability Rights Ohio has "immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability— in any case of death of an individual with a developmental disability." 42 U.S.C. § 15043(a)(2)(J).

138.     In the case of death, no consent from another party is needed. Probable cause to believe that the death of an individual with a developmental disability resulted from abuse or neglect or any other specific cause is not required for the P&A system to obtain access to the records. Any individual who dies in a situation in which services, supports, or other assistance are, have been, or may customarily be provided to individuals with developmental disabilities shall, for the purposes of the P&A system obtaining access to the individual's records, be deemed an "individual with a developmental disability." 45 C.F.R. § 1326.25(a)(5).

139. DBH-licensed facilities or providers are locations because they have served or are serving, supporting, or otherwise assisting individuals with developmental disabilities.

140. DBH is an agency charged with investigating abuse and neglect occurring in facilities.

141. No consent or probable cause is required to access the records of any individual who has died in a situation in which services, supports, or other assistance are, have been, or may customarily be provided to individuals with developmental disabilities.

142. Therefore, under the PADD Act, Disability Rights Ohio has access to the WEIRS reports regarding any death in an DBH-licensed facility. DBH is required to provide the WEIRS reports within 24 hours after the request is made.

143. DBH did not provide WEIRS reports of deaths in DBH-licensed facility until September 26, 2025.

144. Defendants' delay in providing WEIRS reports of deaths to Disability Rights Ohio violates the PADD Act and its implementing regulations.

145. Defendants' violation of the PADD Act and its implementing regulations frustrates and interferes with Plaintiff Disability Rights Ohio's federal mandate to protect people with disabilities in Ohio; provide legal advocacy for people with disabilities; determine whether an investigation by Plaintiff Disability Rights Ohio should be conducted; and determine whether corrective action should be taken.

146. Defendants' violation of the PADD Act and its implementing regulations frustrates the rights of individuals treated at DBH-licensed facilities to have access to a meaningful and effective protection and advocacy system.

147. Defendants have acted under color of state law to deprive Plaintiff Disability Rights Ohio of federal rights under the PADD Act.

148. Plaintiff Disability Rights Ohio is entitled to relief under 42 U.S.C. § 15043 and 42 U.S.C. § 1983.

### Third Claim for Relief: Based on Violation of the PAIR Act, Implementing Regulations, and 42 U.S.C. § 1983 against Defendants DBH and Cornyn

149. Disability Rights Ohio has access to all WEIRs reports related to RTF #1, RTF #2, and the death of any individual in an DBH-licensed facility, which were requested on September 9, 2025.

150. The PAIR Act provides Plaintiff Disability Rights Ohio with the authority to serve individuals with disabilities who are not otherwise eligible for protection and advocacy services under either the PADD Act or PAIMI Act. 29 U.S.C. § 794e(a)(1)(B).

151. Pursuant to 29 U.S.C. § 794e(f)(3), Plaintiff Disability Rights Ohio is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of [individuals with disabilities] within the State.

152. The PAIR Act incorporates the same general authorities of access as are found in the PADD Act, including access to records. 29 U.S.C. § 794e(f)(2).

153. DBH-licensed facilities have served or are serving, supporting, or otherwise assisting individuals with disabilities not otherwise covered by the PAIMI and PADD Acts.

154. DBH is an agency charged with investigating abuse, neglect, or injury occurring at facilities.

155. As described in the Second Claim for Relief, under the PADD Act, Disability Rights Ohio has access to the WEIRS reports for RTF #1 and RTF #2; therefore, it has access to these records under the PAIR Act within the same timelines outlined in the PADD Act.

156.    As described in the Second Claim for Relief, under the PADD Act, Disability Rights Ohio has access to the records of any individual who has died in an DBH-licensed facility. No consent or probable cause is required. Therefore, under the PAIR Act, Disability Rights Ohio has access to the WEIRS reports regarding any death in an DBH-licensed facility. DBH is required to provide the WEIRS reports within 24 hours after the request is made.

157.    Defendants' refusal to allow Plaintiff Disability Rights Ohio access to records within the timelines set forth in statute, violates the PAIR Act and its implementing regulations and frustrates Disability Rights Ohio's ability to conduct full investigations of abuse and neglect and monitor facilities' compliance with resident rights and safety.

158.    Defendants' violation of the PAIR Act and its implementing regulations frustrates and interferes with Plaintiff Disability Rights Ohio's federal mandate to protect people with disabilities in Ohio; provide legal advocacy for people with disabilities; determine whether an investigation by Plaintiff Disability Rights Ohio should be conducted; and determine whether corrective action should be taken.

159.    Defendants' violation of the PAIR Act and its implementing regulations frustrates the rights of individuals at DBH-licensed facilities to have access to a meaningful and effective protection and advocacy system.

160.    Defendants have acted under color of state law to deprive Plaintiff Disability Rights Ohio of federal rights under the PADD Act.

161.    Plaintiff Disability Rights Ohio is entitled to relief under 29 U.S.C. § 794e(f)(2) and 42 U.S.C. § 1983.

**Fourth Claim for Relief: Based on Violations of Ohio Rev. Code § 5123.601 against all Defendants**

162. Under Ohio law, Disability Rights Ohio has access to all records requested from Defendants.

163. Ohio Rev. Code § 5123.60(B) states: "The Ohio protection and advocacy system shall provide [] the following: Advocacy services for people with disabilities, as provided under section 101 of the "Developmental Disabilities Assistance and Bill of Rights Act of 2000," 114 Stat. 1678 (2000), 42 U.S.C. 15001 ["DD Act"]."

164. Disability Rights Ohio is the protection and advocacy system designated under the DD Act for the state of Ohio.

165. Pursuant to 42 U.S.C. § 15043(a)(2)(A)(1), Plaintiff Disability Rights Ohio is authorized to pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with developmental disabilities who are receiving care or treatment in Ohio.

166. The PAIMI and PAIR Acts assign the same mandates to Disability Rights Ohio as the "eligible system" under the DD Act. *See* 42 U.S.C. § 10802(2), 42 U.S.C. § 10805(a)(1)(B), and 29 U.S.C. § 794e(f)(3) and (m).

167. To carry out its authority, Disability Rights Ohio is charged to monitor compliance with respect to the rights and safety of individuals with developmental disabilities, individuals with mental illness, and individuals with all other disability types. *See* 42 U.S.C. § 15043(a)(2)(H), 45 C.F.R. § 1326.27(c)(2)(ii); 42 U.S.C. § 10805(a)(3), 42 C.F.R. § 51.42(c)(2), and 29 U.S.C. § 794e(f).

168. To monitor compliance with rights and safety of individuals with disabilities, Plaintiff Disability Rights Ohio has access to facilities and service providers in Ohio providing

care or treatment to individuals with disabilities. This includes access to DBH-licensed and DBH-operated facilities, locations, and providers. *See* 42 U.S.C. § 15043(a)(2)(H), 45 C.F.R. § 1326.27(c)(2)(ii); 42 U.S.C. § 10805(a)(3), 42 C.F.R. § 51.42(c)(2), and 29 U.S.C. § 794e(f).

169. Disability Rights Ohio also has authority under federal law to investigate allegations of abuse and neglect. Monitoring activities may form the basis for subsequent abuse and neglect investigations. *See* e.g. 42 C.F.R. § 51.31(g).

170. The Ohio Revised Code provides for Disability Rights Ohio's access to records to ensure that Disability Rights Ohio can carry out its mandates under state and federal law.

171. Ohio Rev. Code § 5123.601(A)(1) and (2) state: "The Ohio protection and advocacy system staff, and attorneys designated by the system to represent persons detained, hospitalized, or institutionalized under this chapter or Chapter 5122. of the Revised Code shall have ready access to all of the following:

> a) During normal business hours and at other reasonable times, all records, except records of community residential facilities and records of contract agencies of county boards of developmental disabilities and boards of alcohol, drug addiction, and mental health services, relating to expenditures of state and federal funds or to the commitment, care, treatment, and habilitation of all persons represented by the Ohio protection and advocacy system, including those who may be represented pursuant to division (D) of this section, or persons detained, hospitalized, institutionalized, or receiving services under this chapter or Chapter 340., 5119., 5122., or 5126. of the Revised Code that are records maintained by the following entities providing services for those persons: departments; institutions; hospitals; boards of alcohol, drug addiction, and mental health

29

services; county boards of developmental disabilities; and any other entity

providing services to persons who may be represented by the Ohio protection and

advocacy system pursuant to division (D) of this section;

b)      Any records maintained in computerized data banks of the departments or

boards or, in the case of persons who may be represented by the Ohio protection

and advocacy system pursuant to division (D) of this section, any other entity that

provides services to those persons."

## DEATH INVESTIGATION RECORDS

172.    Defendant NBH is a state regional hospital under Ohio Revised Code Chapter 5122, operated by Defendant DBH. Defendants NBH and DBH provide services to persons with disabilities.

173.    Defendant DBH is the department overseeing mental health and addiction treatment in the state of Ohio as established under Ohio Rev. Code § 5119.14.

174.    All records related to Patient B's death, including quality assurance and personnel records, are maintained either by Defendant NBH (a hospital) or DBH (a department).

175.    Therefore, Disability Rights Ohio has ready access to all records requested.

176.    To date, Defendants have not provided most of the quality assurance or personnel records requested.

## WEIRS REPORTS

177.    All DBH-licensed facilities are required to submit WEIRS reports when certain incidents occur such as: death, suicide, suicide attempt, physical and sexual assault, neglect, and inappropriate use of restraint.

178. Disability Rights Ohio uses the WEIRS reports to monitor DBH-licensed facilities' compliance with patient and resident rights and safety and to determine when investigations may be warranted. Disability Rights Ohio also uses WEIRS reports when investigating abuse and neglect at DBH-licensed facilities.

179. All WEIRS reports are maintained by DBH in its WEIRS database.

180. Therefore, Disability Rights Ohio has ready access to all records requested.

181. To date, Defendants have not provided any WEIRS reports at issue in this case.

182. Defendants' refusal to allow Plaintiff Disability Rights Ohio to have ready access to records violates Ohio Rev. Code §§ 5123.60 and 601.

183. Defendants' refusal to provide records frustrates and interferes with Plaintiff Disability Rights Ohio's federal and state mandate to protect people with disabilities in Ohio; provide legal advocacy for people with disabilities; determine whether an investigation by Plaintiff Disability Rights Ohio should be conducted; and determine whether corrective action should be taken.

184. Defendants' violation of the Ohio Revised Code frustrates the rights of individuals at DBH-licensed facilities to have access to a meaningful and effective protection and advocacy system.

185. Plaintiff Disability Rights Ohio is entitled to relief under Ohio Rev. Code §§ 5123.60 and 601.

## VI.  NECESSITY FOR INJUNCTIVE RELIEF

186. The Defendants have acted and continue to act in violation of the law as explained above.  Plaintiff Disability Rights Ohio and the disabled individuals it is mandated to serve do not have an adequate remedy at law and will be irreparably harmed if Defendants are permitted to continue blocking Plaintiff Disability Rights Ohio's access to records.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Disability Rights Ohio requests the following relief:

A.      a declaratory judgment that Defendants have violated Plaintiff Disability Rights Ohio's rights under the PAIMI Act, PADD Act, PAIR Act, 42 U.S.C. § 1983, and Ohio Rev. Code § 5123.60 and 601.

B.      an injunction ordering Defendants to provide Plaintiff Disability Rights Ohio with access to records from DBH and NBH pursuant to Disability Rights Ohio's federal and state authority;

C.      an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

D.      any other relief that the Court deems appropriate.

Respectfully submitted,

/s/ Laura Osseck
Laura Osseck (0082231)
losseck@disabilityrightsohio.org
Claire Gaglione (102137)
cgaglione@disabilityrightsohio.org
Disability Rights Ohio
200 Civic Center Drive, Suite 300
Columbus, OH 43215
Telephone: 614-466-7264
Facsimile: 614-644-1888

Counsel for Plaintiff