# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DISABILITY RIGHTS OHIO** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.: 2:25-cv-01169** |
| | : | |
| | : | |
| **v.** | : | **Judge: Sarah D. Morrison** |
| | : | |
| | : | |
| **OHIO DEPARTMENT OF** | : | **Magistrate Judge: Chelsey M.** |
| **BEHAVIORAL HEALTH,** | : | **Vascura** |
| | : | |
| **and** | : | |
| | : | |
| **NORTHCOAST BEHAVIORAL** | : | |
| **HEALTH,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **LEEANN CORNYN** | : | |
| **In her official capacity as Director of the** | : | |
| **Ohio Department of Behavioral Health** | : | |
| | | |
| **Defendants.** | | |

---

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Pursuant to Fed. R. Civ. P. 65, Plaintiff Disability Rights Ohio seeks to enjoin

Defendants Ohio Department of Behavioral Health, Director Leeann Cornyn, and Northcoast

Behavioral Health from restricting Disability Rights Ohio's statutorily mandated authority to

access records of disabled individuals. Plaintiff requests that this Court issue a temporary

restraining order and preliminary injunction, requiring Defendants to permit Plaintiff to access

records retained or produced by Defendants, to the full extent permitted by state and federal law.

Plaintiff's Memorandum in Support of this Motion is attached.

Respectfully submitted,

/s/Laura Osseck
Laura Osseck (0082231)
losseck@disabilityrightsohio.org
Claire Gaglione (00102137)
cgaglione@disabilityrightsohio.org
DISABILITY RIGHTS OHIO
200 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Telephone: 614-466-7264
Facsimile: 614-644-1888

*Counsel for Plaintiff*

# MEMORANDUM IN SUPPORT

Plaintiff Disability Rights Ohio ("DRO") seeks a temporary restraining order and preliminary injunction to enjoin Defendants Ohio Department of Behavioral Health ("DBH"), Defendant Northcoast Behavioral Health ("NBH"), and Defendant Cornyn (collectively "Defendants") from violating federal and state laws by denying Disability Rights Ohio's ("DRO") access to records necessary for Disability Rights Ohio to conduct full investigations of abuse and neglect of individuals with disabilities and to monitor compliance with individuals' rights and safety.

As the protection and advocacy system for individuals with disabilities in Ohio, Disability Rights Ohio has state and federal mandates to advocate for and protect the rights of individuals with disabilities. This includes investigating allegations of abuse and neglect in DBH-operated or DBH-licensed facilities and monitoring these facilities for compliance with patient rights and safety. Disability Rights Ohio requested records from Defendants related to several ongoing investigations and as part of its monitoring activities. Defendants have denied or significantly delayed Disability Rights Ohio's access to this information, which has interfered with Disability Rights Ohio's ability to fulfill its state and federal mandates. Disability Rights Ohio has and will continue to suffer immediate irreparable harm as a result of Defendants' actions.

Disability Rights Ohio requests that this Court enter a temporary restraining order and preliminary injunction to allow Disability Rights Ohio to fulfill its mandate as the protection and advocacy system for people with disabilities in Ohio.

## I.    BACKGROUND AND FACTS

### A.    CONGRESS CREATED THE PROTECTION AND ADVOCACY SYSTEM AS A SAFEGUARD FOR PEOPLE WITH DISABILITIES.

In response to national reports uncovering serious abuse and neglect of people with disabilities in segregated facilities, Congress created the Protection and Advocacy ("P & A") system, a national network of independent agencies that serve as a safeguard for people with disabilities. *See generally* 42 U.S.C. § 15041 *et seq.* (developmental disabilities ("PADD")), 42 U.S.C. § 10801 et seq. (mental illness ("PAIMI")), 29 U.S.C. § 794e (other physical or mental impairments ("PAIR")), collectively, the "P & A statutes."

Congress enacted these statutes as independent checks on state systems "after concluding that state systems for protecting the rights of individuals with disabilities varied widely and were in many cases inadequate." *Disability Rts. Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 722 (7th Cir. 2006); *see also Alabama Disabilities Advoc. Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1317-21 (S.D. Ala. 2014). As a condition of receiving federal funding for people with disabilities, the P & A statutes require each state to establish an effective protection and advocacy agency to protect the rights of individuals with disabilities and respond to allegations of abuse and neglect. *Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *Disability Rt.s Wisconsin*, 463 F.3d at 722–23. An effective protection and advocacy system must have the authority to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State . . ." and to investigate possible abuse and neglect. 42 U.S.C. §15043(a)(2)(A)(i) and (B); 42 U.S.C. §10805(a)(1)(A) and (B); 29 U.S.C. §794e(f)(3).

In enacting the original PAIMI Act, Congress recognized that P&As would need broad access to fulfill their mandate. Congress expressed its intent to grant P&As the fullest and

broadest possible access: "The Committee recognizes the need for full access to facilities and clients and to their records to ensure the protection of mentally ill persons. It is the intent of the Committee that the [P&A system] have the *fullest possible access* to client records . . . ." S. REP. 99-109, 10, 1986 U.S.C.C.A.N. 1361, 1370 (emphasis added).

Congress mandates this broad P&A access authority for two main purposes: (1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. § 10802(2), 42 U.S.C. § 10805(a)(3), 45 C.F.R. § 1386.22(f), 42 C.F.R. § 52.42(b), and (2) access for the purpose of monitoring the facility and the treatment of its residents. 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. § 10805(a)(3), 45 C.F.R. § 1386.22(g), 42 C.F.R. § 51.42(c). When facilities or state agencies deny a protection and advocacy system access, the system's recourse is to seek a court order allowing it to receive records. P&As do not have independent authority to impose penalties or to otherwise compel compliance with state or federal laws.

To ensure that Ohio has an effective protection and advocacy system, Ohio has also included a mandate for the protection and advocacy system to protect and advocate for the rights of individuals with disabilities. State law also provides for the system's broad access to individuals, places, and records so that it can fulfill this mandate. *See* Ohio Rev. Code §§ 5123.60 and 5123.601

Disability Rights Ohio is designated by the Governor of the State of Ohio as the protection and advocacy system for people with disabilities in Ohio. *See* Ohio Rev. Code §§ 5123.60 and 5123.601; Exec. Orders 2012-14K and 2015-10K, attached as Exs. 1 and 2. Under federal and state law, Disability Rights Ohio has the authority to investigate allegations of abuse and neglect and monitor facilities and other service providers for compliance with resident rights and safety. Disability Rights Ohio sought to exercise this authority related to several facilities

and individuals residing in or receiving services in DBH-licensed or DBH-operated facilities; however, Defendants have prevented Disability Rights Ohio from carrying out its obligations under federal and state law.

### B. DEFENDANTS DENIED DISABILITY RIGHTS OHIO ACCESS TO QUALITY ASSURANCE AND PERSONNEL RECORDS RELATED TO A PATIENT DEATH INVESTIGATION AT AN DBH-OPERATED HOSPITAL.

On January 17, 2025, Disability Rights Ohio received a report about the death of NBH Patient B. Dec. of Lauren Kraft, ¶ 4. NBH is a state regional psychiatric hospital under Ohio Rev. Code Chapter 5122 that provides inpatient care for mentally ill adults. NBH is operated by DBH.

Patient B was found unresponsive in their room with a plastic bag over their face on November 26, 2024. Dec. of Lauren Kraft, ¶ 12. Patient B was 31 years old. Based on information in the report, Disability Rights Ohio determined that Patient B may have been subject to abuse and neglect resulting in their death. Dec. of Lauren Kraft, ¶ 7. Disability Rights Ohio opened a death investigation in February 2025. On March 3, 2025, Disability Rights Ohio requested records from NBH related to Patient B's death. Dec. of Lauren Kraft, ¶ 9. In May and June, DRO received some of the records, including the coroner's report, which further supported that Patient B was subject to abuse and neglect resulting in their death. Dec. of Lauren Kraft, ¶¶ 10-14. Specifically, Patient B was able to access a plastic bag, which are generally prohibited in mental health facilities because of ligature and suffocation risks. Dec. of Lauren Kraft, ¶ 15. The coroner's report also indicated a time gap between when Patient B was found and when emergency services were called. Dec. of Lauren Kraft, ¶ 13. Disability Rights Ohio made another records request on June 26, 2025 for:

- Internal investigation documents related to a time gap in contacting emergency services after Patient B was discovered unconscious.

- Any corrective actions taken in response to this incident, including documentation of staff retraining, internal reviews, or disciplinary measures.

Dec. of Lauren Kraft, ¶ 17; Dec. of Laura Osseck, ¶¶ 6-7.

At no time did Defendants provide the name and contact information for a legal representative for Patient B. Dec. of Lauren Kraft, ¶ 24.

On August 27, 2025, DBH legal counsel responded to Disability Rights Ohio, stating that DBH would not provide the requested records as they are confidential. Dec. of Laura Osseck ¶ 10. DBH maintains that records of corrective actions are quality assurance records protected under Ohio Rev. Code § 5122.32. Dec. of Laura Osseck, ¶ 10. DRO exchanged emails with DBH counsel explaining the legal basis for the records requests, but DBH refused to provide the requested information. Dec. of Laura Osseck, ¶¶ 11-12. On September 23, 2025, DBH provided a one-page document regarding Patient B's death. Dec. of Laura Osseck, ¶ 20.

To date, the following records related to Patient B's death are outstanding: quality assurance records, including documentation of the initial review conducted by leadership, follow up review, root cause analysis, and any other corrective action implemented because of this incident; and, any corrective actions taken in response to this incident, including documentation of staff retraining, internal reviews, or disciplinary measures for certain identified staff. Dec. of Lauren Kraft, ¶¶ 9-11. This information is necessary to Disability Rights Ohio's investigation to show whether Defendants are taking appropriate measures to ensure patient safety and prevent patient deaths. Dec. of Lauren Kraft, ¶ 23.

Because Defendants have denied Disability Rights Ohio's access to requested records, it has been unable to carry out a full death investigation for Patient B.

### C. DEFENDANTS DENIED ACCESS TO WEB-ENABLED INCIDENT REPORTING SYSTEM (WEIRS) REPORTS RELATED TO ABUSE AND NEGLECT

DBH, as the state licensing and enforcement agency for mental health services providers, licenses several types of facilities providing behavioral, mental health, and other services to individuals with disabilities. 42 U.S.C. § 15043(a)(2)(H); 29 U.S.C. § 794e(f). They include six state regional psychiatric hospitals serving adults with mental illness; Class one facilities that serve adults and children; Class two and three facilities which serve adults; and private psychiatric hospitals or units that serve both adults and children. *See* Ohio Rev. Code Chapters 5122 and 5119. DBH also licenses community mental health providers that provide outpatient services. DBH-licensed facilities serve individuals of all disability types, including individuals with developmental disabilities, intellectual disabilities, traumatic brain injuries, and disabilities other than mental illness. Dec. of Amy Price, ¶ 7.

DBH-licensed facilities must provide reports of incidents in certain categories (e.g. death, suicide attempt, physical or sexual assault) to DBH using DBH's Web-Enabled Incident Reporting System ("WEIRS"). Ohio Admin. Code 5122-14-14(G). DBH maintains all WEIRS reports and state regional psychiatric incident reports. DBH also conducts licensure and certification surveys and investigations of abuse and neglect in DBH-licensed facilities. Dec. of Amy Price, ¶¶ 14-15.

For decades, Disability Rights Ohio and its predecessor, Ohio Legal Rights Services, received unredacted copies of the first page of WEIRS reports from each facility. DRO used these reports to monitor any incidents occurring at the facilities and determine whether an investigation of abuse and neglect was necessary. Dec. of Amy Price, ¶¶ 13, 16. Accessing

WEIRS reports is a critical part of Disability Rights Ohio's continued monitoring and investigation functions to protect disabled Ohioans. Dec. of Amy Price, ¶ 23. However, on August 21, 2025, DBH stopped providing Disability Rights Ohio with copies of WEIRS reports. DBH did not notify DRO of any changes to reporting. Dec. of Laura Osseck, ¶¶ 22-24. When DRO emailed DBH about the lack of access to WEIRS reports, DBH responded stating Disability Rights Ohio's access to WEIRS reports was "was inconsistent with OhioMHAS[1] policies, statewide data governance requirements, and applicable federal and state privacy laws." Dec. of Laura Osseck, ¶ 22. Disability Rights Ohio met with DBH on September 3, 2025, to discuss continued access to WEIRS reports. However, they were unable to reach an agreement. Dec. of Laura Osseck, ¶ 26.

### WEIRS REPORTS RELATED TO INCIDENTS AT RTF #1 AND RTF #2

Disability Rights Ohio has ongoing investigations of abuse and neglect occurring at two residential treatment facilities for youth – RTF #1 and RTF #2. RTF #1 and RTF #2 are licensed by DBH as class one residential treatment facilities providing treatment to children and adolescents with disabilities. Ohio Admin. Code 5122-30-03(A)(42). RTF #1 is also licensed by DBH as a private psychiatric hospital or unit.

On September 9, 2025, DRO requested access to: all WEIRS reports received since August 22, 2025, from RTF #1 and RTF #2 as part of ongoing investigations into abuse and neglect at these facilities. For RTF #1, Disability Rights Ohio has reports of, among other things, use of prohibited chemical restraints, simultaneous use of chemical restraints and seclusion, inappropriate use of restraint and seclusion, over-reliance on medications that are unapproved

---

[1] Ohio Department of Behavioral Services was previously known as Ohio Department of Addiction and Mental Health Services.

and dangerous to the youth, underreporting, staff abuse, sexual assault, staff failing to intervene in peer-to-peer aggression resulting in injuries, lack of a therapeutic environment, and a lack of trauma-informed care. Disability Rights Ohio believes that the health and safety of these youth are in serious and immediate jeopardy. Dec. of Amy Price, ¶ 36.

At RTF #2, Disability Rights Ohio has reports of high rates of suicide attempts, neglect, peer-to-peer aggression, lack of a therapeutic environment, and a lack of trauma-informed care, among others. DRO believes that abuse and neglect is occurring or has occurred at this facility. Dec. of Amy Price, ¶ 39.

RTF #1 and RTF #2 serve youth with different diagnoses, including serious mental illness, other mental illnesses, Autism, ADHD, among others. Dec. of Amy Price, ¶ 32. Given the youths' complex behavioral needs as well as the structure of these facilities, the youth are unable to consent to the release of records. For example, many youths in these facilities experience ongoing mental health crises due to their complex behavioral health needs. Additionally, many children at the facilities are emotionally dysregulated, heavily medicated, and often cannot interact appropriately with their environment. The environment at these facilities outside of group and school is often unstructured, chaotic, and frequently includes confrontations with staff and other peers. These factors among others make consent difficult or impossible. Dec. of Amy Price, ¶¶ 33-34. Most, if not all, of the youth at RTF #1 and RTF #2 are in the custody of children services agencies. Dec. of Amy Price, ¶ 35.

On September 26, 2025, DBH provided copies of approximately 60 redacted WEIRS from the period between August 22, 2025, and September 9, 2025, which included reports of incidents at RTF #1 and RTF #2. These records included two incidents at RTF #1 in which one youth attempted suicide on August 25, 2025. Because of the delay from DBH in providing this

information, it is likely that relevant information related to these incidents such as video is lost. Dec. of Amy Price, ¶¶ 45-46.

**WEIRS REPORTS RELATED TO DEATHS AND OTHER INCIDENTS**

Additionally, on September 9, 2025, Disability Rights Ohio requested all WEIRS reports related to the death of any individual in any DBH-licensed facility as well as all WEIRS reports for:

- Class one residential facilities
- Class two residential facilities
- Class three residential facilities
- Private psychiatric hospitals

Dec. of Laura Osseck, ¶ 27.

Generally, Disability Rights Ohio reviews the WEIRS reports as part of its mandate to ensure that facilities are complying with resident/patient rights and safety. The reports alert Disability Rights Ohio to possible issues at facilities and provide information about patterns that may be occurring there. Dec. of Amy Price, ¶¶ 23-24.

Disability Rights Ohio asked for the WEIRS reports within 24 hours, which was the time in which DBH previously provided the reports and which complied with the timelines set forth in the state and federal statutes governing Disability Rights Ohio's state and federal access authority.

In an email dated September 12, 2025, DBH denied DRO's request for all WEIRS reports. DBH and stated that it would consider the request under Ohio's Public Records Act. Dec. of Laura Osseck, ¶ 19.

The redacted WEIRS reports provided to Disability Rights Ohio on September 26, 2025, also included an incident in which a young individual died in a Class two facility. Because of Defendants DBH and Cornyn's delay in providing this information to Disability Rights Ohio, it

has been prevented from determining timely whether an abuse or neglect investigation is needed. The delay also risks the loss of time-sensitive information about this incident as well as others that have occurred at DBH facilities, including videos, statements from witnesses, victims, and other relevant information. Dec. of Amy Price, ¶ 46.

Finally, when Disability Rights Ohio determines that follow up is necessary, Disability Rights Ohio contacts the facility directly for more information. Redactions in the WEIRS reports remove information necessary for Disability Rights Ohio to provide facilities when following up. Dec. of Amy Price, ¶ 47.

## II.    ARGUMENT

DRO seeks a temporary restraining order and preliminary injunction because Defendants' continuing violation of federal and state law prevents DRO from fulfilling its mandate as the protection and advocacy system for people with disabilities in Ohio. Denial or delay of access to records impairs DRO's ability to perform its mandated duties to investigate abuse and neglect as well as its obligations to monitor facilities and advocate for and protect the rights of individuals with disabilities in DBH-licensed facilities. It also prevents individuals with disabilities from exercising their rights to an effective protective and advocacy system. A temporary restraining order and preliminary injunction is appropriate in this case because DRO's legal authority to access records of individuals in the care of DBH-operated and licensed facilities is clear under federal and state law. Further, the factors for issuing a temporary restraining order or preliminary injunction favor DRO.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council,*

*Inc.*, 555 U.S. 7, 20 (2008); *State of Connecticut Off. of Prot. & Advoc. for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 653 (D. Conn. 2005); *Ohio Legal Rts. Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 883 (S.D.Ohio 2005)[2]; *Wisconsin Coal. for Advoc., Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1051 (E.D.Wis. 2001); *Prot. & Advoc. For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 311 (D.Conn.2003)).

The 6th Circuit has held that the standards for a preliminary injunction and a temporary restraining order are the same if the other side has received notice and an opportunity to be heard. *See* Fed.R.Civ.P. 65(a); *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) (citing *News Herald v. Ruyle*, 949 F.Supp. 519, 521 (N.D.Ohio 1996); *see also Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir. 1982).

## A.   DISABILITY RIGHTS OHIO IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

### 1.   DRO is likely to succeed on the merits of its claims pursuant to federal law.

DRO has asserted claims pursuant to three federal P&A statutes and the Ohio Revised Code. The law surrounding P&A access authority is well-settled, and DRO is likely to succeed on the merits of its claims. A party need only demonstrate a likelihood of success on the merits on the "central issue" of a party's claims to satisfy this prong. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir.1997).

Under the P&A Acts, DRO is authorized to investigate suspected incidents of abuse and neglect of individuals with disabilities, as well as to monitor facilities for compliance with patient and resident rights and safety. 42 U.S.C. § 10805; 42 U.S.C. § 10806; 42 C.F.R. § 51.42; 42 U.S.C. § 15043; 45 C.F.R. § 1326.25; 29 U.S.C. § 794e(f)(2). DRO asserts its rights here to

---

[2] Ohio Legal Rights Service was the independent state agency precursor to Disability Rights Ohio. On October 1, 2012, Ohio Legal Rights Service ceased to exist and Disability Rights Ohio succeeded it as the P & A agency.

access the requested information to investigate allegations of abuse and neglect, and to monitor

facilities to prevent abuse and neglect.

### 2. Disability Rights Ohio has access to the quality assurance and personnel records to investigate the death of Patient B at NBH.

To complete investigations of abuse and neglect, PAIMI provides access to all records of

any individual (including an individual who has died or whose whereabouts are unknown)—

> (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
> (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
> (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect[.]

42 U.S.C. § 10805(a)(4)(B).

The PAIMI Act's regulations expressly include personnel records in the type of records

that P&A systems have access to for abuse and neglect investigations. 42 C.F.R. § 51.41(d) ("A

P&A system shall have reasonable access and authority to interview and examine all relevant

records of any facility service recipient (consistent with the provisions of section 105(a)(4) of the

Act) *or employee*.") (emphasis added).

Further, courts have interpreted PAIMI's records access to include peer review and

quality assurance records. *See Prot. & Advoc. For Persons With Disabilities, Conn. v. Mental

Health & Addiction Servs.*, 448 F.3d 119, 128 (2nd Cir., 2006) ("the plain language of PAIMI

that grants [the P&A] access to 'all records of ... any individual,' including 'reports prepared by

any staff of a facility,' encompasses peer review reports."); *Ctr. For Legal Advoc. v. Hammons*,

323 F.3d 1262, 1270 (10th Cir.2003) (holding that the PAIMI Act requires disclosure of quality

assurance and peer review records to the state P&A system). Courts have also held that the

PAIMI Acts' records mandates preempt any state law that gives a healthcare facility the right to

withhold requested peer review records. *See Pennsylvania Prot. & Advoc., Inc. v. Houstoun*, 228 F.3d 423, 428 (3d Cir.2000).

Defendants must provide the quality assurance and personnel records that Disability Rights Ohio has requested pursuant to the PAIMI Act. Disability Rights Ohio has a report of abuse or neglect that resulted in Patient B's death – namely, their access to a plastic bag and a delay in reporting to 911. Dec. of Lauren Kraft, ¶¶ 15, 13. New information received also indicates that Patient B did not receive the level of supervision that they required from facility staff. Dec. of Lauren Kraft, ¶22. Though the report of Patient B's death alone is sufficient to trigger Disability Rights Ohio's authority to access the records to conduct a full investigation, these events also satisfy probable cause requirements. Also, Patient B is deceased and cannot provide consent to Disability Rights Ohio. DBH has not provided the name of any individual acting as Patient B's legal representative though it is required to do so because its basis for denial is a lack of authorization. 42 C.F.R. § 51.43. DBH and NBH control these records. These facts satisfy the requirements of 42 U.S.C. § 10805(a)(4)(B) and Disability Rights Ohio is entitled to the quality assurance and personnel records related to Patient B's death from Defendants.

**B.  DISABILITY RIGHTS OHIO HAS ACCESS TO THE WEIRS REPORTS REQUESTED UNDER FEDERAL AND STATE LAW**

**1.  Access to WEIRS reports for RTF #1 and RTF #2 under PAIMI, PADD, and PAIR Acts**

Disability Rights Ohio has access to the WEIRS reports requested for RTF #1 and RTF #2 under PAIMI, PADD, and PAIR acts.

As stated above, Disability Rights Ohio has access under the PAIMI Act to all records of any individual who cannot consent, does not have a guardian, or the guardian is the State, and with respect to whom a complaint has been received by the P&A system or the P&A has probable cause to believe that the individual is subject to abuse and neglect. 42 U.S.C. §

10805(a)(4)(B). The PADD Act contains a similar provision applicable to individuals with developmental disabilities. *See* 42 U.S.C. § 15043(a)(2)(I). Additionally, in the case where Disability Rights Ohio determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, no consent is required. 42 U.S.C. § 15043(a)(2)(J)(ii). The PAIR Act also provides for services to individuals with disabilities that are neither developmentally disabled under the PADD Act nor mentally ill under the PAIMI Act. 29 U.S.C § 794e(a)(1)(B). For example, an individual with a learning disability or orthopedic impairment would be eligible for services under the PAIR Act. The PAIR Act includes the same mandate as and incorporates the same general access authority in the PADD Act. 29 U.S.C. § 794e(f)(1)-(3). Generally, these records should be provided promptly – within three business days from the date of the request or within 24 hours in certain circumstances (i.e. when the P&A believes the individual is in serious and immediate jeopardy or in the case of any death of an individual). 42 U.S.C. § 15043(a)(2)(J).

Both RTF #1 and RTF #2 serve youth with mental illness, developmental disabilities, and other disabilities. Therefore, the PAIMI, PADD, and PAIR Acts are applicable to the youth at RTF#1 and RTF #2. Disability Rights Ohio has ongoing investigations at RTF #1 and RTF #2. For RTF #1, Disability Rights Ohio has determined there is probable cause to believe that the health and safety of the youth are in serious and immediate jeopardy – no consent to access records is required.

Additionally, Disability Rights Ohio does not need consent to access the WEIRS reports for RTF #1 or RTF #2 because it meets the factors above –the youth are unable to authorize Disability Rights Ohio's access to records, most, if not all, the children do not have guardians

other than state (i.e. children services agencies), and Disability Rights Ohio has determined that youth are subject to abuse and neglect there.

Finally, Disability Rights Ohio has access to reports from "any agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents . . ." 42 U.S.C. § 10806(b)(3)(A). DBH is such an agency.

Therefore, Disability Rights Ohio has access to the WEIRS reports of these facilities within the timelines set out under federal law – 3 business days from the date of the request for RTF #2 and 24 hours from the date of the request for RTF #1. Though Defendants provided redacted WEIRS reports for these facilities on September 26, 2025, this was not sufficient to satisfy federal law. Dec. of Laura Osseck, ¶¶ 30-31. The reports were provided weeks past the timelines under federal law and the delay has likely led to the loss of relevant information.

> **2.** **Access to WEIRS reports related to the death of any individual in an DBH-licensed facility under the PADD and PAIR Acts.**

For individuals with developmental disabilities, the PADD Act grants DRO "immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability— in any case of death of an individual with a developmental disability." 42 U.S.C. § 15043(a)(2)(J)(ii)(II).

Further, the P&A system is not required to provide probable cause that the death resulted from abuse or neglect or any other specific cause for the P&A system to obtain access to the records. 45 C.F.R. § 1326.25(a)(5). "Any individual who dies in a situation in which services, supports, or other assistance are, have been, or may customarily be provided to individuals with developmental disabilities shall, for the purposes of the P&A system obtaining access to the

individual's records, be deemed an "individual with a developmental disability." *Id.* PAIR incorporates the access authority provided under PADD. 29 U.S.C. § 794e(f)(2).

DBH-licensed facilities or providers are locations under the PADD and PAIR Acts because they currently serve, support, or otherwise assist individuals with disabilities covered by these statutes or have done so in the past. DBH, as the licensing and enforcement agency and agency charged with investigating abuse or neglect in these facilities, maintains reports related to these deaths. Thus, the PADD and PAIR Acts require Defendants DBH and Cornyn to provide WEIRS reports related to the death of any individual in an DBH-licensed facility within 24 hours of the request. Disability Rights Ohio is not required to obtain consent or allege probable cause to obtain records where a death has occurred. Defendants DBH and Cornyn's refusal to provide these records within 24 hours of the request violates the PADD and PAIR Act.

### 3. Access to all records requested under Ohio law.

Disability Rights Ohio has access to all records requested, including records related to the death of Patient B and all WEIRS reports, under Ohio law.

Ohio Rev. Code § 5123.60 requires Disability Rights Ohio to provide "[a]dvocacy services for people with disabilities, as provided under section 101 of the "Developmental Disabilities Assistance and Bill of Rights Act of 2000," 114 Stat. 1678 (2000), 42 U.S.C. 15001."

Under the DD Act, Disability Rights Ohio has "three primary functions: to investigate, to educate, and to monitor." *Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1094 (N.D. Ill. 2003). The PADD, PAIMI and PAIR Acts not only describe the range of services to be provided by the protection and advocacy systems, they also state that the systems must have the authority to perform those services. 42 U.S.C. § 10805(a)(1); 42 U.S.C. § 15043(a)(A) and (B); 29 U.S.C. § 794e(f)(2).

"The state cannot satisfy the requirements of the [DD and PAIMI Acts] by establishing a protection and advocacy system which has the authority in theory, but then taking action which prevents the system from exercising that authority." *Mississippi Prot. & Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991). Any other reading of the Acts "would attribute to Congress an intent to pass an ineffective law." *Alabama Disabilities Advoc. Program v. J.S. Tarwater Developmental Ctr.*, 894 F. Supp. 424, 429 (M.D. Ala. 1995), aff'd, 97 F.3d 492 (11th Cir. 1996).

Disability Rights Ohio's investigative authority and need for records such as quality assurance, personnel, and relevant WEIRS reports, is discussed extensively above. In addition to investigations, Disability Rights Ohio also monitors facilities for several purposes, including compliance with resident rights and safety. To complete monitoring activities, DRO has access to service providers and service recipients. 42 U.S.C. § 15043(a)(2)(H), 45 C.F.R. § 1326.27(c)(2)(ii); 42 U.S.C. § 10805(a)(3), 42 C.F.R. § 51.42(c)(2), and 29 U.S.C. § 794e(f). Monitoring activities may form the basis for subsequent abuse and neglect investigations. *See* 42 C.F.R. § 51.31(g). The WEIRS reports submitted to DBH from facilities alert Disability Rights Ohio to possible issues or patterns with facilities' compliance with resident rights and safety – a key purpose of Disability Rights Ohio's monitoring authority.

To ensure that Ohio has an effective protection and advocacy system that can carry out its mandates – including monitoring facilities - under federal and state law, Ohio law provides for broad access to records. Under Ohio Rev. Code § 5123.601(A)(1), Disability Rights Ohio has ready access without exception to: "all records . . . relating to expenditures of state and federal funds or to the commitment, care, treatment, and habilitation of all persons . . . detained, hospitalized, institutionalized, or receiving services under this chapter or Chapter 340., 5119.,

5122., or 5126. of the Revised Code that are records maintained by the following entities providing services for those persons: departments; institutions; hospitals . . ."

Under Ohio Rev. Code § 5123.601(A)(2), Disability Rights Ohio has ready access without exception to: "Any records maintained in computerized data banks of the departments or boards or, in the case of persons who may be represented by the Ohio protection and advocacy system pursuant to division (D) of this section, any other entity that provides services to those persons."

The quality assurance, personnel, and WEIRS reports that Defendants maintain are necessary to complete monitoring activities or investigations of abuse and neglect. Defendant NBH is a state regional hospital under Ohio Revised Code Chapter 5122, operated by Defendant DBH, providing services to people with disabilities. Either DBH or NBH maintain all records related to the death investigation of Patient B, including quality assurance and personnel records. Similarly, all WEIRS reports requested as part of abuse and neglect investigations at RTF #1 and RTF #2 and WEIRS reports related to deaths and other incidents are maintained by DBH in its WEIRS database. As all requested records are maintained by defendants NBH and DBH, DRO is entitled to ready access to those records under Ohio Rev. Code § 5123.601(A)(1) and (2). Defendants' refusal to allow DRO to access requested records violates these provisions of the Ohio Revised Code.

### C. DISABILITY RIGHTS OHIO WILL SUFFER IRREPARABLE HARM IF IT IS UNABLE TO ACCESS RECORDS FROM DEFENDANTS.

Disability Rights Ohio meets this prong of the temporary restraining order and preliminary injunction test because courts have concluded that a P & A agency's inability to meet its federal statutory mandate to protect and advocate for the rights of individuals with disabilities is an irreparable harm for purposes of injunctive relief. *Ohio Legal Rights*, 365 F.

Supp. 2d at 883 ("There is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm."); *Connecticut Office*, 464 F.3d at 234 (2d Cir. 2006).("Courts have concluded that a P & A system's inability to meet its federal statutory mandate to protect and advocate for the rights of individuals with disabilities is an irreparable harm for purposes of injunctive relief"); *Matter of Disability Rts. Idaho Request for Ada Cnty. Coroner Recs. Relating to the Death of D.T.*, 168 F.Supp.3d 1282, 1300 (D. Idaho, March 7, 2016) (siding with numerous courts holding that a P&A's inability to meet its federal statutory mandate to protect and advocate on behalf of those with mental illness constitutes irreparable harm). The state mandates reflect those of federal law.

Here, in the case of NBH Patient B's death investigation, Disability Rights Ohio made its initial records request on March 3, 2025. Dec. of Lauren Kraft, ¶ 9. Over six months later, Defendants still have not provided the full scope of records necessary to investigate Patient B's death. This delay is well beyond the timelines required under state and federal law and prevents Disability Rights Ohio from completing a full investigation of abuse and neglect resulting in Patient B's death.

Similarly, Defendant DBH's and Cornyn's delay in providing WEIRS reports has interfered with Disability Rights Ohio's ability to complete timely monitoring and investigation activities of serious incidents, including the death of a resident at a Class 2 facility and additional incidents occurring at RTF #1. Dec. of Amy Price ¶¶ 45-46. Disability Rights Ohio requested WEIRS documents related to abuse and neglect investigations at RTF #2 and RTF #1, deaths, and other incidents that occurred in DBH-licensed facilities on September 9, 2025. Dec. of Laura Osseck ¶ 27. Several weeks later, on September 26, 2025, DBH provided redacted copies of

WEIRS reports. Dec. of Laura Osseck ¶ 30. Defendants DBH and Cornyn have exceeded the PADD, PAIMI, and PAIR Acts timelines for releasing records. This delay has likely resulted in the loss of information relevant to ongoing investigations, including for at least one incident related to RTF #1. Dec. of Amy Price ¶ 43. The delay has also prevented Disability Rights Ohio from effectively completing monitoring activities as we received information weeks after incidents occurred, risking the loss of relevant information.

Disability Rights Ohio has been and will continue to be irreparably harmed by the denial and delay of access to the requested records because it is unable to effectively fulfill its federal and state mandates to protect and advocate for the rights of individuals with disabilities in DBH-licensed or operated facilities.

### D. THE BALANCE OF EQUITIES TIPS IN DISABILITY RIGHTS OHIO'S FAVOR.

The balance of equities tips in the favor of Disability Rights Ohio because Defendants will not suffer substantial harm if this Court issues a temporary restraining order and preliminary injunction. However, Disability Rights Ohio's access authority and ability to carry out its federally and state mandated duties will be severely compromised absent injunctive relief from this Court. The Sixth Circuit has described this third prong as "whether issuance of a preliminary injunction would cause substantial harm to others." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citation omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation marks and citation omitted).

Issuance of an injunction against Defendants does not subject the Defendants to a penalty or hardship because it requires them to do exactly what the P & A statutes require: allow

Disability Rights Ohio access to records. *See Advoc. Ctr. v. Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999). On the other hand, Defendants' refusal to allow DRO to access records for investigatory and monitoring purposes poses a real threat to DRO's ability to discharge its statutorily mandated obligations. *See Wisconsin Coal.*, 131 F. Supp. 2d at 1051. A denial or delay in access could lead to a loss of information such as video or the opportunity to interview victims or witnesses.

Nor would an injunction harm any third parties, especially those institutionalized at NBH and other facilities under the charge of DBH. Disability Rights Ohio routinely conducts investigations and monitoring activities at facilities in Ohio without adverse effects to Disability Rights Ohio constituents, who benefit from the education, resources, and services that Disability Rights Ohio provides. Indeed, the residents and patients at these facilities have a right to an effective protection and advocacy system to protect and advocate for their rights. Ensuring that Defendants follow the laws applicable to the protection and advocacy system helps protect resident and patient rights.

    **E.    THE PUBLIC INTEREST WILL BE SERVED BY THIS COURT GRANTING A PRELIMINARY INJUNCTION.**

The public interest is served by the fulfillment of DRO's mandate as the protection and advocacy agency, as evidenced by Congress's findings regarding the need for the P & A system. In determining the public interests that are relevant to a motion for a preliminary injunction, this Court may consider Congress's statements about the public interest. *See NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x. 929, 944 (6th Cir. 2007) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.4 (2d ed.1995)) ("The public interest may be declared in the form of a statute.").

By passing the P & A statutes, Congress made an explicit finding that "[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C. § 10801. Congress created the P & A system, funded it, and granted it broad access authority because individuals with disabilities are "vulnerable to abuse, injury, and neglect." *Pennsylvania Prot.*, 228 F.3d at 425. By passing the P & A statutes, Congress has expressed that the public interest is satisfied by allowing P & A systems like Disability Rights Ohio access to the information it needs to fulfill its federal and state mandates. Other courts have agreed that granting P&A systems injunctive relief serves the public interest. *See, e.g.*, *Michigan Prot. & Advoc. Serv., Inc. v.Evans*,, No. 09-12224, 2010 WL 3906259, at *5 (E.D. Mich. Sept. 30, 2010) ("It is in the public's interest to have agencies such as Plaintiff able to access the necessary records to ensure individuals with disabilities are not suffering from abuse or neglect.") (issuing permanent injunction and awarding attorney's fees); *Advoc. Inc. v. Tarrant Cnty. Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *6 (N.D. Tex. Oct. 11, 2001) ("Nor is the public interest done a disservice by the timely investigation and resolution of concerns about the treatment of the more vulnerable members of society."). Thus, congressional findings and purpose, as well as federal courts' interpretation of the P & A statutes, demonstrate that the issuance of a temporary restraining order and preliminary injunction in this matter is in the public interest.

### F. DISABILITY RIGHTS OHIO SHOULD NOT BE REQUIRED TO POST A BOND

The Sixth Circuit has interpreted Fed. R. Civ. P. 65(c) to provide the district judge discretion to determine whether a bond is required for security. *Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1176 (6th Cir.1995) (affirming district court's decision to waive bond based on strong legal merit and public interest component). The equitable circumstances of the

present case support a conclusion that the posting of a bond is not warranted. *See Am. Sys. Consulting, Inc. v. Devier*, 514 F. Supp. 2d 1001, 1010 (S.D. Ohio 2007) (finding that a bond was not warranted after an equitable analysis). Disability Rights Ohio's underlying case is strong, as evidenced by extensive precedent supporting P & A access authority. Disability Rights Ohio is a non-profit organization attempting to enforce its federally and state-mandated access authority, which Congress and Ohio created to ensure that the rights of individuals with disabilities would be enforced and protected. There is a strong public interest component in this case. DRO respectfully asks that the bond requirement be waived.

## III.   CONCLUSION

. For these reasons, DRO respectfully requests that this Court issue a temporary restraining order and preliminary injunction against Defendants, requiring Defendants to permit Plaintiff DRO to access records to the full extent permitted by state and federal law.

Respectfully submitted,

/s/Laura Osseck
Laura Osseck (0082231)
losseck@disabilityrightsohio.org
Claire Gaglione (00102137)
cgaglione@disabilityrightsohio.org
DISABILITY RIGHTS OHIO
200 Civic Center Drive, Suite 300
Columbus, Ohio  43215
Telephone:  614-466-7264
Facsimile:   614-644-1888

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

A copy of the foregoing PLAINTIFF'S MOTION FOR A TEMPORARY

RESTRAINING ORDER AND PRELIMINARY INJUNCTION has been served via the Court's

electronic filing system this 7th day of October, 2025, which will send notice of such filing to all

counsel of record.

I certify that I have provided copies of all pleadings, motions, and exhibits to the

following lawyers for the Department of Behavioral Health and Northcoast Behavioral Health:

Jennifer.Bondurant@dbh.ohio.gov

Naomi.Maletz@dbh.ohio.gov

/s/Laura Osseck
Laura Osseck (0082231)